UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA MURRAY, et al.,

      Plaintiffs,

                                    CASE No. 1:21-CV-983

v.

                                    HON. ROBERT J. JONKER

CITY OF NEW BUFFALO, et al.,

      Defendants.

_____/

## OPINION AND ORDER

### INTRODUCTION

Public meetings require a balance of free expression and reasonable decorum.  Plaintiffs say the City of New Buffalo and its Mayor got it wrong both in their written rules and in particular applications to each Plaintiff's attempt to speak at particular meetings.  Defendants say the rules and their application to Plaintiffs are fully defensible.  Both sides seek summary judgment.  The Court agrees the case can be decided as a matter of law but does not completely agree with either side on the merits of the various claims.

### FACTUAL BACKGROUND

New Buffalo is a pleasant resort community on the southwestern shore of Lake Michigan. Residents and tourists alike appreciate what it has to offer.  And its proximity to the greater Chicago area makes it a natural choice for people hoping to escape the rigors of city life for a while.  The demand for places to stay naturally generates interest on the part of some property owners to offer places for rent.  Other residents prefer to preserve the relative tranquility of a small town by limiting short term rental options.  The issue became a political hot potato in New Buffalo.

In the spring of 2019, the city of New Buffalo began considering proposals to restrict short-term rentals within the city limits.  Eventually, the New Buffalo City Council offered an ordinance that would, among, other things, prohibit new, short-term rental permits from being issued within the residentially zoned areas of the city.[1]  The short-term rental ordinance was placed as an agenda item for a first reading during a New Buffalo City Council special meeting on October 4, 2021.  Following that, the ordinance would be placed on the agenda during the November 23, 2021, meeting for final passage.

### 1.   The City of New Buffalo's Structure and City Council Meeting Rules

The New Buffalo City Council (the "Council") is comprised of five members.  Under the City Charter, the Council is the legislative and policy-making body for the city. *See* § 3.1, City Charter, City of New Buffalo (eff. Nov. 1, 1965), https://ecode360.com/30882889 ("The government of the City, and all the powers thereof, except the judicial powers, shall be vested in the Council.").  The Council meets monthly (the 3rd Monday of each month) for regular business. *Id.* at § 3.4.  The Council may also meet for special meetings when requested by the mayor or two members of the Council and upon notice to the rest of the Council.  *Id.* at § 3.4

Meetings of the Council are required by the City Charter and the Council's Rules of Meetings Procedure to be open to the public.  *See* § 3.7, City Charter, City of New Buffalo (eff. Nov. 1, 1965), https://ecode360.com/30882889; City of New Buffalo, Mich. City Council Rules of Meetings Procedure, § 12(A), *available at* ECF No. 1-1 (PageID.18).  And under Michigan law, the public both has the right to attend Council meetings and the right to address the Council "under the Rules established and recorded" by the Council.  MICH. COMP. LAWS § 15.263(5).

---

[1] The ordinance itself has been subject to litigation in this district. *See Moskovic v. City of New Buffalo*, No. 1:21-cv-144 (W.D. Mich. filed Feb. 12, 2021).  Plaintiffs do not challenge the ordinance here.

The City of New Buffalo recognizes this right in its City Charter.  It provides: "rules of order of the Council shall provide that citizens shall have a reasonable opportunity to be heard." City Charter, *supra*, at § 3.7.  Accordingly, the City of New Buffalo has adopted rules to govern the procedure at Council meetings.  A copy of the Rules of Procedure in effect during the events of this case is attached to Plaintiffs' Complaint at ECF No. 1-1.  Pertinent for purposes here are Rules 12(A) and 12(D).  As provided by Rule, members of the public must sign up to speak before the start of the Council meeting.  Those who have signed up are each allotted three minutes during the public comment period of the meeting agenda in which to speak.  Speakers must "address their comments to the City Council as a whole, as mediated by the presiding officer."  Rule 12(A), Rules of Procedure (ECF No. 1-1, PageID.18-20).  And Rule 12(D) provides that "[s]peakers are not to swear or use expletives or make derogatory or disparaging comments about any one person or group.  Speaker comments must be civil and respectful."  *Id.* at Rule 12(D).

### 2. *Defendant Humphrey's Application of Rule 12 to Plaintiffs' Remarks*

Plaintiffs are three individuals who have attended New Buffalo City Council meetings and who have signed up to speak during the public comment period of the meetings.  Defendant Humphrey testified that their opinions were well known, and that Plaintiffs Murray and Giometti had been coming to Council meetings since the beginning of 2021.  (Humphrey Dep. 34, ECF No. 36-3, PageID.391).  Ms. Murray is the administrator of a New Buffalo Short Term Rental Discussion Group on Facebook.  Plaintiff Giometti and O'Donnell are also members of the group. (Murray Decl. ¶ 4, ECF No. 38, PageID.517).  All three allege their comments criticizing the ordinance were interrupted, truncated, or terminated by Defendant Humphrey--purportedly based on Rule 12--but in reality, they say, to censor their views on the ordinance and the mayor.  Mayor Humphrey had campaigned for office and won on a platform opposing short-term rentals.

3

> a. *October 4, 2021, City Council Meeting*

The first reading of the zoning ordinance was on the Council's agenda for its October 4, 2021, meeting.  Plaintiffs Murray and Giometti attended the meeting and signed up to speak during the public comment period.  The meetings of the Council are recorded, and a video recording of this meeting is a part of the record.  *See Ison v. Madison Local School District Board of Education*, 3 F.4th 887, 892 (6th Cir. 2021) (noting that where parties present videotape evidence, courts view the facts in the light depicted by the videotape).  Both sides reference the video in their briefing, and during oral argument counsel for the defense agreed that the video recording is an excellent source of information concerning the events in question.

Passions were heated in advance of the meeting.  According to the defense, before the meeting even began (and before the recording started) Plaintiff Giometti "set the stage" for the entire meeting by threatening a woman in the front row at the beginning of the meeting. (Humphrey Dep. 29, 34 ECF No. 36-3, PageID.388, 391).  Neither Defendant Humphrey nor any other Council member took any action, however, because it appeared to them that Plaintiff Giometti controlled himself and walked away. (Humphrey Dep. 29, ECF No. 36-3, PageID.388).

The meeting eventually began, and the Council moved through the agenda to the public comment period.  When Plaintiff Murray's name was called, she got up to speak and approached the podium.  She commented that the "city council sits here poised to cause irrevocable harm to the community and its constituents."  She urged that the proposed ordinance be voted down, and that instead the Council "take the advice of the planning commission and come up with an alternative that is both fair and equitable to both the long-term residents of the city and the property owners who choose to rent their property out on a short-term basis."

Plaintiff Murray then made a number of comments that were at first interrupted and then entirely cut off by Defendant Humphrey.  The speech she claims was protected include remarks about (1) the "perception that has been created is that of a power-hungry mayor;" (2) referring to the mayor's position on short term rentals as a "personal vendetta"; (3) asserting this vendetta has "clouded" the mayor's judgment; and (4) asserting that the mayor was "strategically trying to control."   The mayor interrupted Plaintiff Murray throughout this portion of her remarks, ultimately ejecting her before she finished her last comment.  When Plaintiff Murray asked why she was out of order, the mayor stated: "Because you were addressing me directly and you were asked not to direct me [sic].  You challenged me directly.  You were asked to address the council as a whole and given the rules and you refuse."  (Am. Compl. at ¶ 19).

While Plaintiff Murray was being escorted out, Plaintiff Giometti's name was called, and he got up.  He gathered his personal items and walked from his seat towards the aisle.  As he did so, Plaintiff Giometti made a comment about excusing himself from the meeting.  But once in the aisle, he turned to the Council and commented that the Council should be ashamed of themselves. Defendant Humphrey interjected by stating "quickly exit yourself or I'll have you removed, sir." Mr. Giometti retorted: "I'm addressing the board.  Don't I have three minutes?"  Defendant Humphrey responded: "No you don't.  You're done.  Out of here.  Mr. Gio- Mr. Gietti [sic] we're familiar with your online performances as well."  (*Id.* at ¶ 21).  Mr. Giometti left, the public comment period subsequently closed, and the first reading of the ordinance was completed.

### b.  *November 23, 2021, City Council Meeting*

The Council issued a Notice for a November 23, 2021, special meeting.  The second reading of the proposed short-term rental ordinance was on the agenda.  If passed, the proposed

changes would be enacted.  In the leadup to the meeting, Plaintiffs Murray and Giometti filed the original complaint in this case.  They also filed a motion for a preliminary injunction and temporary restraining order seeking an order that would prohibit Defendants from restricting any person from speaking during the public comment period on the basis of the speaker's actual or anticipated viewpoint.  (ECF Nos. 1, 2).  The Court denied the motion to the extent it sought *ex parte* relief on November 22, 2021 (ECF No. 6), and the meeting proceeded as scheduled.

Both Plaintiff O'Donnell and Plaintiff Murray spoke at this meeting.  It appears undisputed that Plaintiff Murray was permitted to speak uninterrupted, though she avers she self-censored herself so as not to be gaveled out of order.  (Murray Decl. ¶ 6, ECF No. 37, PageID.517).  Plaintiff O'Donnell also spoke.  She made comments about an alleged lack of a quorum and that one Council member (but not Mayor Humphrey) was allegedly intoxicated.  Mayor Humphrey declared her out of order at that point and asked that she be ejected, but Ms. O'Donnell turned away so that she would not be ejected.

After public comment, the proposed ordinance was passed 3 to 0 (two Council members were absent).  *See New Buffalo City Council Meeting Minutes*, City of New Buffalo (Nov. 23, 2021),        https://cityofnewbuffalo.org/meetings/city-council-special-meeting-november-23-2021/#/tab-minutes.

c. *March 21, 2022, City Council Meeting*

The third Council meeting referenced by the parties took place on March 21, 2022.  During this meeting, Plaintiff O'Donnell got up to speak during the public comment.  Neither Plaintiff Murray nor Plaintiff Giometti made comments.

Plaintiff O'Donnell began her remarks by stating the Council was driving wedges between full time residents and others.  The Council's actions, Plaintiff O'Donnell said, were promoting conflict over compromise in the community.  At the forefront of the divide, she said, was New Buffalo's mayor, Defendant Humphrey.  Plaintiff O'Donnell asserted the mayor was unfit to serve in any capacity in local government.   Plaintiff O'Donnell then adopted Plaintiff Murray's terminology and asserted that over the past year, Defendant Humphrey had dedicated most of the city's time and resources "towards advancing his personal vendetta against" second homeowners, tourists, and short-term rental property owners.  In doing so, she pointed out, the mayor had subjected the city to multiple lawsuits.

Plaintiff O'Donnell then began to comment: "[Mayor] Humphrey does not respect the healthy exchange of opposing viewpoints."  (First Am. Compl. ¶ 27, ECF No. 27, PageID.258).  At that point, Defendant Humphrey began gaveling Ms. O'Donnell as out of order, but Ms. O'Donnell continued by stating that the mayor's "temper and hostility suffocate the free exchange of ideas."  (*Id.*).  The deposition testimony of Ms. O'Donnell then provides a more complete transcript of the interaction from there:

| | |
|---|---|
| Ms. O'Donnell: | His temper and hostility suffocate the free exchange of ideas --- |
| Mayor Humphrey: | You're out of order. (unreportable sound) |
| Ms. O'Donnell: | -- and what's good for the overall success of our city.  And his animosity in office grows.  New Buffalo loses.  Humphrey has called local property owners idiots— |
| Mayor Humphrey: | You're out of order. |
| Ms. O'Donnell: | -- and told city officials that they need to publicly humiliate those that disagree with this -- |
| Mayor Humphrey: | If you continue to speak, I'm going to have you removed. |
| Ms. O'Donnell: | He has also – |

| | |
|---|---|
| Mayor Humphrey: | You've been warned numerous times. |
| Ms. O-Donnell: | (inaudible) local schools by --- |
| Mayor Humphrey: | I'm asking you --- |
| Ms. O'Donnell: | --engaging in ideas in dispute with the school's administration, which begs the question, is this really the person we want to be the leader of our city? |
| Unidentified female: | We're done. |
| Ms. O'Donnell: | Humphrey has lashed out against – |
| Unidentified female: | We're done.  Let's go. |
| Ms. O'Donnell: | I'm not – |
| Unidentified female: | We're done.  Let's go. |

(ECF No. 36-4, PageID.407-408).[2]

Plaintiff O'Donnell was removed from the meeting by a police officer.  She claims that she received a minor laceration on her arm while being escorted out of the council meeting.  (*Id.* at ¶ 29).

### 3.  *Later Developments*

The Council has met several times since these three meetings.  There is no claim of disputes between the parties at any of these meetings.  On May 16, 2022, the Council amended its Rules of Procedure.  (ECF No. 36-7, PageID.432).  Under the old rules in effect during the three challenged meetings there was one general public comment period.  Rule 12(A) prescribed the three-minute time limit for each speaker during the comment period, and clarified that speakers could not reserve time, yield or loan time, share time, or borrow time from other public participants.  Rule 12(A) closed by stating "[t]he public shall address their comments to the City Council as a whole, as

---

[2] The deposition testimony fleshes out some of the allusions and references that were made during these remarks.  For example, the reference to humiliation and idiots appears to allude to a text message from the mayor dated September 18, 2021, to the city manager wherein Mayor Humphrey allegedly said about one of the plaintiffs in another case about short-term rentals: "But we really need to do something about this woman, because people are believing her and gonna burn this town down, at very least you need to email her go over point by point how she's an idiot, without publicly humiliating her this will continue." (Case No. 1:21-cv-144, ECF No. 118-31, PageID.4604 (W.D. Mich.); *see also* Humphrey Dep. 284-284, Case No. 1:21-cv-144, ECF No. 121-4, PageID.5254 (W.D. Mich.).

mediated by the presiding officer."  (ECF No. 1-1, PageID.19).  Other sections provided that members of the public could speak only during the public comment period (Rule 12(B)) and had to sign up to speak in advance of the meeting and wait to be called by the mayor.  (Rule 12(C)).  Rule 12(C) further provided that once called up, speakers had to move to the podium and be acknowledged.  The rule reiterated Rule 12(A)'s admonition that "[p]ublic comment shall not be addressed to other members of the public present at the meeting."  (ECF No. 1-1, PageID.19).  Rule 12(D) touched on the speech itself.

> Speakers are not to swear or use expletives or make derogatory or disparaging comments about any one person or group.  Speaker comments must be civil and respectful.  Comments on physical appearance, race, gender, other protected status or character unrelated to public issues or performance of duties will not be tolerated.  Speakers should also be careful to avoid making comments that could subject them to civil liability, such as slander and defamation.

(ECF No. 1-1, PageID.19).

The rules went on to provide that members of the public were not to interrupt speakers or other council members.  They were expected to respect the views of others and not interrupt or harass speakers (Rule 12(E)).  No other person, furthermore, other than Council Members or the City Manager, was permitted to enter into any discussion with a member of the public speaking from the podium.  (Rule 12(G)).  Members of the public were also not permitted to make any parliamentary action, such as raising objections or points or order, or calls for a vote.  (Rule 12(H)).  Violations of these rules were to be addressed by the presiding officer and could result in expulsion of the speaker from the meeting.  Rules 12(A) and (D) are the focus on this case.

The amended rules, in contrast, provide for two public comment periods, one for general remarks and the other limited to agenda items.  Rule 12(D) was also amended.  In the main, the amendments appear to have removed the "derogatory or disparaging comments about any one

person or group" phrase from the rule, and replaced it with a lengthier detailed procedure for public remarks.  For example, speakers must speak from the podium; they were encouraged to identify themselves and their city of residence, and if speakers had materials they wished to hand out, the materials had to be passed out by the clerk.  (ECF No. 36-6, PageID.430).

Further legislative action with respect to short-term rentals have not been an active agenda item in the subsequent city council meetings.

## PROCEDURAL HISTORY

This lawsuit was initially filed by Plaintiffs Murray and Giometti against the City of New Buffalo and Mayor John Humphrey on November 19, 2021.  The original Complaint raised two claims for relief.  (ECF No. 1).  Count 1 raised a federal claim under 42 U.S.C. § 1983 asserting a violation of Plaintiffs' First and Fourteenth Amendment rights.  Count 2 raised a state law claim asserting a violation of Michigan's Open Meetings Act, MICH. COMP. LAWS § 15.261 *et seq.* The same day Plaintiffs filed a motion for temporary restraining order and preliminary injunction. (ECF No. 2).   The Court denied the motion to the extent it sought *ex parte* relief and ordered further briefing.  (ECF No. 6).  On December 7, 2021, the defense responded to the preliminary injunction motion.  (ECF No. 12).  Thereafter Plaintiffs filed a reply brief.  (ECF No. 13).  The Court convened a Rule 16 scheduling conference on February 25, 2022.  During the conference the Court declined to exercise supplemental jurisdiction over the state law claim in Count 2 in Plaintiffs' Complaint.  The Court also heard argument on Plaintiffs' request for preliminary relief. (ECF No. 20).   The Court took the motion under advisement pending the results of further proceedings before the Magistrate Judge.

Thereafter Plaintiffs filed a First Amended Complaint (ECF No. 27) to add Plaintiff O'Donnell and the factual allegations related to the November 23, 2021, and March 21, 2022, city

council meetings.  The First Amended Complaint raises a single federal claim asserting a violation of Plaintiffs' First and Fourteenth Amendment rights.  The claim has multiple facets.  Plaintiffs challenge the 2016 version of Section 12(D) of New Buffalo's City Council Rules of Meetings Procedures—prohibiting speakers from making "derogatory or disparaging comments about any one person or group" and requiring comments to be "respectful"—on its face under the First and Fourteenth Amendments, and Section 12(A), requiring speakers to "address their comments to the City Council as a whole" as applied.  As later briefed, the parties also addressed the validity of the newly enacted meeting rules.

The Court denied the preliminary injunction motion in a decision dated June 17, 2022. (ECF No. 30).  The parties have completed discovery, and the defense (ECF No. 36) and Plaintiffs (ECF No. 37) have each filed a motion for summary judgment.  The motions have been fully briefed.  The Court heard argument on the motions on December 20, 2022, and thereafter took them under advisement.  The motions are ready for decision.

## LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Material facts are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

11

When cross motions for summary judgment are filed, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391)). "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting *Moore's Federal Practice*).

## DISCUSSION

### 1.  *The Request for Forward Looking Injunctive Relief is Not Justiciable*

#### a.  *The Request for Injunctive Relief Against the Old Rules is Moot*

The parties first dispute whether the request for injunctive relief is moot in light of the 2022 amendments to Section 12(D) of the council rules.  To the defense the request for injunctive relief is moot because the hinge phrase in Rule 12(D) relating to "derogatory and disparaging comments" no longer appears in the rules following the May 2022 amendments.  The rules, they say, now focus on decorum and personally directed remarks.  Plaintiffs claim the request for injunctive relief is not moot for several reasons: (1) Rule 12(A) is unaffected, and the mayor has applied that rule in a way that silences speakers from critiquing individual council members during public comment; (2) the repeal vote was directly related to this litigation, thus the Court ought to be suspicious of a mootness claim; and (3) the request is not moot because the mayor will likely apply the new rules in the same way to prohibit protected speech.  The Court concludes that the request for injunctive relief is moot.

Article III of the United States Constitution limits the jurisdiction of federal courts to live "cases" and "controversies."  *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  This is "'a cradle-to-grave requirement' that must be satisfied at the time a plaintiff first brings suit and that must remain satisfied throughout the life of the case."  *Hrivnak v. NCO Portfolio Management, Inc.*, 719 F.3d 564, 567 (6th Cir. 2013) (quoting *Fialka-Feldman v. Oakland Univ. Bd. of Tr.*, 639 F.3d 711, 713 (6th Cir. 2011)).  "If a case in federal court loses its character as an actual, live controversy at any point during its pendency, it is said to be moot."  *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009).  Once that occurs, "the case is no longer within the jurisdiction of the federal courts, and therefore must be dismissed."  *Id.*; *see also Ahmed v. Univ. of Toledo*, 822 F.2d 26, 27 (6th Cir. 1987) ("It is fundamental that we may not decide moot issues.").

In a recent decision the Sixth Circuit found that a school board's recission of policy language related to public remarks mooted a request for injunctive relief.  *See Davis v. Colerain Township*, Case No. 21-3723, 2022 WL 4351074 (6th Cir. Sept. 20, 2022).  There, the court of appeals observed:

> When later events have eliminated the plaintiff's injury or made it impossible for the court to grant relief, the case has become moot and a court must dismiss it.  If, for example, a defendant stops engaging in the conduct that threatens to harm the plaintiff, this choice could moot a request for an injunction against that conduct.  That scenario often arises when a legislature repeals a challenged law or an executive officer repeals a challenged regulation.

*Id.* at *6 (internal citations omitted).

Courts should, however, "start with skepticism" when a defendant claims a voluntary cessation has mooted a case.  This is based on a fear that a defendant will revert to its old ways after the dismissal of the suit.  *Id.*  For this reason, "[a] defendant must show that it is 'absolutely

clear' that its rescinded conduct could not 'reasonably be expected' to happen in the future." *Id.*

(quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

"Government defendants have an easier time satisfying this test because [courts] presume that they

will not resume their challenged conduct unless objective evidence suggests that they have made

a bad faith change to avoid judicial review." *Id.* And "[t]his presumption gains even more strength

if the government has changed course through a formal process because the formalities involved

make it more difficult to reinstate the old policy later. A legislative repeal presumptively moots a

case, for example, because of the difficulty of going through the legislative process again to reenact

the rescinded law." *Id.* (internal citations omitted). Moreover, "[a] case has also more likely

become moot when the government has made the change because of something external to the

plaintiff's suit." *Id.*

Applying these considerations, the Sixth Circuit in *Davis* found that the plaintiff's

challenge to a rule of decorum barring "disrespectful speech" was moot. *Id.* at *7. The changes

were passed in a formal, legislative like meeting, and the minutes of the meeting where the repeal

was enacted indicated an external reason for the changes beyond the plaintiff's litigation: the Sixth

Circuit's decision in *Ison v. Madison Loc. Sch. Dist. Bd. of Education*, 3 F.4th 87 (6th Cir. 2021).

There was nothing in the record that would make the court "suspicious that the board insincerely

adopted the change only to get rid of" the lawsuit "so it could reimpose the rescinding rule after"

the lawsuit was dismissed. *Davis v. Colerain Township*, 2022 WL 4351074 at *7.

The request for injunctive relief has the same mootness hallmarks as *Davis*. The challenged

rule was repealed through a formal committee vote by a governmental body on May 16, 2022.

The cover letter from the city attorney with the proposed changes stated that the changes were

necessary given the change in law. (ECF No. 36-6, PageID.429). At most, the record indicates

that the Council meetings in the fall of 2021 also informed the city's decision.  For example, Defendant Humphrey testified that the events of this case led the city attorney to inform him about the change in law.  (Humphrey Dep. 44-45, ECF No. 37-4, PageID.509-510).  And some of the other changes, including the explicit requirement that public comments be made from the podium and that any handouts need to be made through the city clerk arguably were made in response to Plaintiff Giometti and Plaintiff O'Donnell's actions.  Yet there is nothing in the record that would overcome the presumption afforded to governmental defendants and indicate that the Council might reimpose the rescinded rule.  Accordingly, the Court concludes that the request for prospective, injunctive relief, is moot.

### b.  A Challenge to the New Rules is Not Ripe

Plaintiffs maintain, however, that the door is not completely closed on the request for forward looking relief because the new rules both facially and as applied violate their First Amendment rights.  Plaintiffs do not argue that the mayor or anyone on the city council have actually applied the new rules, but they contend that it can reasonably be understood from the mayor's deposition testimony that he would apply the new rules in the same way to limit speech based on viewpoint.

This argument is not yet ripe.  Typically ripeness is evaluated according to three factors: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Insomnia, Inc. v. City of Memphis,* 278 F. App'x 609, 612 (6th Cir.2008) (internal alterations omitted) (quoting *Warshak v. United States,* 490 F.3d 455, 467 (6th Cir. 2007)).As Plaintiffs admit, the new rules have not yet actually been applied to them.  Nor do they allege there

is a real possibility that they will be.  More fundamentally, however, and as it relates to the facial challenge to the new rules, the new rules have not been a part of this case until summary judgment proceedings.  They are not a part of the pleadings.  Thus the record is not sufficiently developed to fairly adjudicate the merits of the parties positions on the new rules.  For this reason, the Court determines that a facial or as applied challenge to the Rules of Procedure, as modified by the City Council is 2022, is not yet ripe.

### 2. *Backwards-Looking Relief*

Even if the request for prospective relief is moot or not yet ripe, the defense agrees that Plaintiffs can proceed with a challenge to the 2016 version of the rules for nominal and monetary damages.  The defense contends, however, that it is still entitled to summary judgment on the remaining request for relief because Defendant Humphrey is entitled to legislative and qualified immunity, and because it further claims there is no genuine issue of material fact that Plaintiffs fail to establish a facial or as applied constitutional violation and municipal liability under *Monell* in any event.

### A. *Constitutional Violation*

The matter turns to Plaintiffs' facial and as applied challenges to the Rule 12(A) and (D) as they existed during the three meetings in this case and as Defendant Humphrey applied them.

 "Numerous federal courts have addressed the tension between a public body's interest in conducting an orderly and efficient meeting without fear of judicial intrusion, and a private citizen's interest in speaking freely to his or her elected representatives." *Shields v. Charter Tp. of Comstock*, 617 F. Supp. 2d 606, 612 (W.D. Mich. 2009) (collecting cases).  "Both interests are important.  The private citizen, by definition, generally has no official power to participate in the public body's decision-making process.  When the body opens that process to the general public

16

and allows input from the individual members of the community, the private citizen has a right to expect a fair and respectful hearing even if—maybe even *especially* if—the message is critical of the body." *Id.* (emphasis in original). "The First Amendment protects that right, while still accommodating the body's need to conduct its business efficiently, by allowing reasonable and content-neutral restrictions on speech." *Id.*

"The First Amendment, applicable to the states through the Fourteenth, prohibits the government from abridging the freedom of speech." *Ison v. Madison Local School District Bd. of Educ.*, 3 F.4th 887, 892-93 (6th Cir. 2021) (internal quotation marks omitted). "A violation of the right to free speech occurs only when the restricted speech is constitutionally protected and the government's justification for the restriction is insufficient." *Timmon v. Wood*, Nos. 5:05-cv-127. 5:06-cv-7, 2006 WL 2033903, at *6 (W.D. Mich. July 18, 2006), *aff'd in part, rev'd in part*, 316 F. App'x 364 (6th Cir. June 14, 2007). "The strength of the First Amendment protection, and the level of justification required for a speech restriction varies depending on the forum where the speech occurs." *Ison*, 3 F.4th at 893. Thus, courts within the Sixth Circuit apply a three-part inquiry to examine First Amendment free speech claims: "[F]irst, we determine whether the speech at issue is afforded constitutional protection; second, we examine the nature of the forum where the speech was made; and third, we assess whether the government's action in shutting off the speech was legitimate, in light of the applicable standard of review." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015).

The speech at issue here is clearly afforded constitutional protection, as both sides recognize. "Freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997). "The right of an American citizen to

criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'"  *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964)).  Thus, there is no dispute on the first part of the test: the parties agree that Plaintiffs' comments during the public comment period of the City of New Buffalo's city council meetings is protected speech.

### 1.  Nature of Forum

The parties disagree on the nature of the forum.  *See Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518 (6th Cir. 2019) (noting that to assess a restriction on speech in a city council meeting, the court must first determine what type of forum the council meeting was).  "The Supreme Court has recognized three types of public fora: the traditional public forum, the designated public forum, and the limited public forum."  *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010) (citing *Pleasant Grove v. Summum*, 555 U.S. 460 (2009)); *see also id.* (noting as a fourth category, a nonpublic forum which is "government-owned property that is not by tradition or governmental designation 'a forum for public communication.").

The parties agree that the public comment period of the City of New Buffalo City Council meetings are not traditional public fora.  They disagree about whether the city council meeting is a designated public forum (as Plaintiffs argue) or a limited public forum (as the defense contends).  Determining which forum analysis applies is not always easy.  *See* Terri Day and Erin Bradford, *Civility in Government Meetings: Balancing First Amendment, Reputational Interests, and Efficiency*, 10 FIRST. AMEND. L. REV. 57, 77-78 (2011) (finding the various circuit courts' forum analyses for public comment sessions "is a morass of confusion.").  For example, in *Youkhanna*, the Sixth Circuit Court of Appeals used both "designated" and "limited" to describe City Council meetings:

18

> City Council meetings, like the school-board meeting at issue in *Lowery* [*v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009)], 'cannot accommodate the sort of uninhibited, unstructured speech that characterizes a public park.  That is why courts call this sort of forum a 'designated' and 'limited' public forum: 'designated' because the government has 'intentionally open[ed]' it 'for public discourse,' and 'limited' because 'the State is not required to . . . allow persons to engage in every type of speech' in the forum."

*Youkhanna*, 934 F.3d at 519 (citing *Lowery*).

To Plaintiffs, whether a public comment period is a "designated forum" or a "limited forum" depends on whether the public comment period is limited to agenda items, or not.  Those cases that have applied the limited public forum framework, they contend, have involved cases where the speech was limited to city council meeting agendas.  *Youkhanna*, for example, involved a rule that limited public comment to agenda items.  *Youkhanna*, 934 F.3d at 514.  But where, as here, public comment periods have no relevancy restriction, Plaintiffs contend the designated public forum analysis should apply.  The defense disagrees and argues that unlike a traditional or designated public forum, the City Council meeting was not opened to the public at large, but rather was an exercise of the City Council's legislative function of holding public meetings governed by Council Rules.

When it decided the preliminary injunction motion, the Court found that it was unnecessary to resolve the parties' disagreement.  Both designated and limited public fora, the Court observed, permit reasonable decorum rules, and neither type of fora permits viewpoint discrimination.  The question is simply one of degree.  And as a practical matter, the degree of reasonable decorum restriction, if any, that is needed often has more to do with the nature of the topic than whether the evening's agenda has formal action on the subject or not.  The Court is satisfied it need not resolve the forum label dispute here.  In previous decisions, this court has laid out the governing standard

where, as here, a plaintiff claims their public comments at city council meetings were cutoff in violation of the First Amendment:

> A legislative body like [a city council] may impose restrictions on a public commenter's speech as long as the restrictions (1) are content neutral, (2) are narrowly tailored, and (3) leave open alternative channels of communication.

*Timmon v. Wood*, 633 F. Supp. 2d 453, 459 (W.D. Mich. 2008) (citing *Jobe v. City of Catlettsburg*, 409 F.3d 261, 266 (6th Cir. 2005)); *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811, 814 (W.D. Mich. 1999) (Quist, J.) (analyzing First Amendment claim stemming from public comment period under limited public forum analysis); *see also Ison*, 3 F.4th at 893 (same).  *Youkhanna* also analyzed two content-based limitations on speech under a limited public forum framework. *Youkhanna*, 934 at 519.

### 2.  *Facial Challenge to Rules*

Defendants are entitled to summary judgment on Plaintiffs' facial challenge to Rule 12(A) and (D) of the 2016 rules.  A facial challenge requires the rule to be unconstitutional in almost all conceivable applications, "to take the law off the books completely."  *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009).  Here, courts "look to the Policy's text and determine whether it unconstitutionally burdens speech."  *Ison*, 3 F.4th at 893 (citing *Speet v. Schuette*, 726 F.3d 867, 871-73 (6th Cir. 2013)).  "Generally, to 'succeed in a typical facial attack,' a plaintiff must establish 'that no set of circumstances exists under which [the statute] would be valid.'"  *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (quoting *United States v. Stevens*, 559 U.S. 460 (2010)).  In a First Amendment facial attack, "a plaintiff must show substantial overbreadth: that the statute prohibits 'a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep.'"  *Id.* (quoting *Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir. 2010).

Rule 12(A) is not facially unconstitutional.  Requiring the speaker to address the council as a whole applies regardless of the content of the speech.  *See Moms for Liberty – Brevard Cty. v. Brevard Public Schools*, No. 6:21-cv-1849, 2022 WL 272940, at *2 (M.D. Fla. Jan. 24, 2022) ("Requiring the speaker to address the Chair rather than individual Board members is not based on the speech's content, but because members do not possess the power of the board.").  Thus the defense is entitled to summary judgment in its favor on a facial challenge to Rule 12(A).

The parties' focus, however, is on Rule 12(D) and its prohibitions against derogatory or disparaging comments about any one person or group.  Both sides' arguments focus on *Ison*, a recent decision addressing speech during a public meeting.  In *Ison*, a school board responded to a school shooting by proposing that staff members be permitted to carry concealed weapons.  In addition, students who walked out of their classrooms to protest gun violence were disciplined.  Disturbed by these events, the plaintiffs in the case began attending local school board meetings. *Ison* 3 F.4th at 891.  During one such meeting, one of the plaintiffs accused the board of "threaten[ing] the school" to punish the student protestors, and accused the board of "taking a very strong position of guns." *Id.* at 892.  The presiding officer interrupted the speaker, first cautioning him not to use "threatening" and then admonishing the plaintiff to stop "putting words" in the school board's mouth.  The plaintiff was eventually escorted from the room.  The plaintiffs subsequently sued the school board, arguing that the school board's policy restricting "abusive," "personally directed," and "antagonistic" speech facially violated the First Amendment.  The Court of Appeals agreed and reversed the trial court's grant of summary judgment for the school board on this issue.

The holding is helpful for Plaintiffs, to be sure, but it is not enough to demonstrate success on a facial challenge here.  And, bearing in mind the well-founded cautions in *Ison*, the Court

determines that the defense is entitled to summary judgment on a facial challenge to Rule 12(D).
In *Ison*, the Sixth Circuit Court of Appeals looked to two recent decisions from the United States
Supreme Court to conclude that the "government may not censor speech merely because it is
'offensive to some.'" *Ison*, 3 F.4th at 894 (citing *Matal v. Tam*, 582 U.S. 218 (2017) and *Iancu v.
Brunetti*, ___ U.S. ___, 139 S. Ct. 2294 (2019)).  But the Sixth Circuit was careful to explain its
decision should not be read as indicating that "regulations guarding against actual ad hominem
*attacks*, even verbal, are not permitted in a limited public forum."  *Ison*, 3 F.4th at 894 n.1
(emphasis in *Ison*).  Indeed, the Court of Appeals found the "reasonable decorum" part of the
policy perfectly legitimate even though the term would obviously require some interpretations by
the presiding officer.  *Id.* at 897.  Longstanding prohibitions on speech consisting of personal
attacks, in other words, were not touched on in the decision.

Rule 12(D) is content-neutral on its face.  The prohibitions on derogatory, disparaging, and
disrespectful language are not based on the speech's content, but rather on a reasonable need for
decorum in a meeting.  "Preservation of order in city council meetings to ensure that the meetings
can be efficiently conducted" is a legitimate government interest.  *Timmon v. Wood*, 316 F. App'x
364, 366 (6th Cir. 2007); *see also Gault*, 73 F. Supp. 2d at 814 ("[I]t is well established that a
citizen addressing a city governmental body in a limited public forum may be stopped from
speaking if the speech is 'irrelevant or repetitious' or 'disrupts, disturbs or otherwise impedes the
orderly conduct of the council meeting' so long as the speaker is not 'stopped from speaking
because the moderator disagrees with the viewpoint he is expressing.'") (quoting *White v. City of
Norwalk*, 900 F.2d 1421, 1425-26 (9th Cir. 1990)).  After *Ison*, one court has upheld a policy that
"invite[s] citizens to present critical comments, so long as the comments are not done in a

disruptive manner." *Davis v. Colerain Township*, 551 F. Supp. 3d 812, 821 (S.D. Ohio July 30, 2021).

The Court sees Rule 12(D) as a facially valid effort to establish a reasonable rule of decorum.  The rule focuses on comments that disparage "any one person or group," not simply words that may offend someone.  And the Rule singles out for exclusion "[c]omments on . . . character unrelated to public issues or performance of duties," not simply a statement that antagonizes.  *C.f. Mama Bears of Forsyth County v, McCall*, ___ F. Supp. 3d ___ No. 2:22-cv-142-RWS, 2022 WL 18110246 (N.D. Ga. Nov. 16, 2022) (requirement that public comments be made "in a respectful manner" facially violated the Constitution).  Read in that context, Rule 12(D) does not prohibit speech merely because it antagonizes or offends, which is what concerned the *Ison* panel, but may fairly be seen as an effort to enforce decorum, which *Ison* continues to permit. To be sure, the presiding officer could misapply the rule to shut down a particular point of view, but the rule as written does not inevitably lead for such a result.  Content neutral application is entirely possible.  Thus, the defense is entitled to summary judgment on the facial challenge to Rule 12(D).

### 3.  *As Applied Challenge*

Even if the Rules of Procedure are facially constitutional, Plaintiffs argue that the mayor applied the rules requiring the public to "address their comments to the City Council as a whole" and to ensure comments refrain from "derogatory or disparaging comments about any one person or group" and are "civil and respectful" in an unconstitutional manner.  An "as applied" challenge to a statute requires the reviewing court to determine, on a case-by-case basis, whether the regulation as applied to the facts of the case abridges the First Amendment.  *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 758-59 (1988).  The Court concludes there is no genuine

issue of material fact but that the mayor applied Rules 12(A) and (D)'s at the October 4, 2021, and March 21, 2022, City of New Buffalo City Council meetings in a way that constitutes viewpoint discrimination.   The defense is entitled to summary judgment in its favor on the as applied challenge to the November 23, 2021, meeting.

*a.  The October 4, 2021, Meeting*

The videotape recording of the October 4, 2021, Council meeting demonstrates that Plaintiff Murray's comments became critical of the mayor in the overall context of her opposition for the short-term rental ordinance at issue.   She remarked that the mayor's judgment had been clouded by his "vendetta" against short-term rentals, and she began to insist that the mayor was "strategically trying to control" things before the mayor cut her off.   Defendant Humphrey then gave his reasons, namely, that Plaintiff Murray was addressing him directly, indeed she had "challenged him directly."   After Plaintiff Murray was ejected, Plaintiff Giometti got up.   In ejecting him, the mayor commented "we're familiar with your online performances as well."

In this the mayor misapplied Rules 12(A) and (D) to discriminate based on viewpoint.  His comments as to Mr. Giometti could hardly be more blatant on this point.  The only justification given for the expulsion was Mr. Giometti's online activities that opposed the short-term rental ordinance.   In applying the rules, as he did, the mayor silenced speech based on viewpoint by prohibiting any speech that had as its subject comments that criticized a sitting city council member, particularly one in favor of the short-term rental ordinance opposed by the speakers.   The mayor was clear on this in his deposition that he viewed the critical comments as a personal attack that was invalid under the Rules of Procedure:

> Yes, that was not addressing the council as a whole.  That was a
> direct attack on the mayor.  She [Plaintiff Murray] accused me of
> being power hungry and said I had a personal vendetta and I viewed
> that as a personal attack, yes, I did.

24

(Humphrey Dep. 10, ECF No. 36-3, PageID.380).  But in doing so, the mayor cut off entirely any remark that was critical of the city council and his leadership in precisely the short-term rental issue at hand.  The right to criticize public officials, within bounds, is a core right protected by the First Amendment.  Here the mayor's application of the rules violated that right.

The defense sees facts that it says should distinguish Plaintiff Giometti's as applied challenge.  The defense claims the mayor's actions must be understood in the context of the pre-meeting altercation that took place between Plaintiff Giometti and another member of the public.  Furthermore, the defense points to Plaintiff Giometti's comments as he stood up about excusing himself.  To the defense, Plaintiff Giometti had ceded his time and whatever the mayor did after that did not tread on Plaintiff Giometti's constitutional rights.  These arguments are unpersuasive for purposes of finding Plaintiffs have established an as-applied challenge here.  The mayor did not reference the altercation in ejecting Mr. Giometti from the council chamber. Mr. Giometti addressed his comments to the city council, and he did not refer to the other citizen or the earlier dispute.  Defendant Humphrey himself testified that Mr. Giometti appeared to control himself following the altercation.   With respect to Mr. Giometti's comment as he got up, there appears to be no dispute that Mr. Giometti's name was called.  Once his name was called, he was recognized to speak, as Defendant Humphrey testified.  (Humphrey Dep. 30, ECF No. 36-3, PageID.389).[3] When he ejected Mr. Giometti from the council chamber, the mayor did not make any reference to Mr. Giometti ceding his time, instead only referencing Mr. Giometti's online performances.

---

[3] To the extent the defense contends that Mr. Giometti was not recognized until he approached the podium, the record demonstrates Mr. Giometti got up and turned to face the podium, consistent with the rule's requirement at the time that members "move to the podium."  In any event, Mayor Humphrey did not rule him out of order for this reason and indeed testified that once Mr. Giometti's name was called, he was recognized to speak.

Accordingly, the Court determines Plaintiffs have demonstrated that the mayor applied the Rules of Procedure to silence speech based on viewpoint during the October 4, 2021, meeting.

### b.  The November 23, 2021, Meeting

Things are different with respect to the November 23, 2021, meeting.  Plaintiff Murray was permitted to speak without interruption.  She claims she self-censured herself, but regardless cannot demonstrate that the mayor applied the rules in any way as to her that unconstitutionally silenced her speech.  Plaintiff O'Donnell was interrupted by the mayor.  But the comments that earned a gavel, namely, an accusation that a city council member was intoxicated, were not critical of the council members' policy position or official actions.  It was a direct attack on an individua entirely unrelated to point of view.  The mayor's action in ruling such comments out of order reasonably enforced the Council's rules of decorum, and did not silence speech with respect ot viewpoint.  The voters will be fully able to air concerns and complaints about candidates for office, including incumbent office holders, in the election process, in online fora, and in local newspapers, coffee shops and sidewalks.  A city council rule can reasonably curtail such accusation and discussion during public comment segments.

### c.  The March 21, 2022, Meeting

The mayor once again misapplied the rules to silence viewpoint during Plaintiff O'Donnell's public comments at the March 21, 2022, meeting.  The mayor accepted several critical comments before he interrupted and shut down Plaintiff O'Donnell. But his animus to her viewpoint on short-term rentals is obvious and undeniable.  It is true that Plaintiff O'Donnell began referring to outside litigation and events beyond the narrow issue of short-term rentals, but her argument overall remained focused on the short-term rental issue, including the references the mayor had made to property owners aligned with Plaintiffs here as idiots in need of public

humiliation.  And as Plaintiff O'Donnell is trying to hold the mayor accountable for that kind of viewpoint hostility, the mayor begins trying to shut her down, ironically underscoring her point. Only in the back and forth of the interruption did Plaintiff O'Donnell refer to another case involving the mayor that in her view rooted in the same dynamic, much as a lawyer might use Rule 404(b) events to make a point about the current case.  On this record, the Court sees no genuine issue of material fact but that the mayor attempted to shut down Plaintiff O'Donnell and had her removed because she disagreed with the mayor.[4]

Accordingly, the defense is entitled to summary judgment on Plaintiffs' as applied challenge as to the November 23, 2021, meeting; but Plaintiffs are entitled to summary judgment on the other two meetings.

### B.    *Monell*

The defense contends the city is entitled to summary judgment in any event because Plaintiffs' cannot demonstrate municipal liability.  The Court disagrees.

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Instead,

---

[4] The defense seems to assert that the mayor never actually ejected Ms. O'Donnell and says that the police removed Plaintiff O'Donnell at their own discretion.  But there appears to be no dispute that sometime before Ms. O'Donnell was removed, the mayor looked at the chief of police and addressed him by his first name.  (Humphrey Dep. 19, ECF No. 36-3, PageID.385).  The mayor testified that this wasn't necessarily to ask that Plaintiff O'Donnell be ejected, but rather a word of exasperation about the situation, given the litigation, and an implicit question about how long they would have to put up with this.  Regardless, the chief of police did not eject Plaintiff O'Donnell.  Another officer, Courtney Severn, heard the mayor address the chief.  This, along with her own observations, led the officer (who is the unidentified female in the transcript) to walk to Ms. O'Donnell and remove her from the meeting.  (See ECF No. 36-5, PageID.421).  The point remains: mayor was the presiding officer and initiated Plaintiff O'Donnell's ejection during this meeting.

a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)).   In a municipal liability claim, the finding of a policy or custom is the initial determination to be made.  *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020); *Doe v. Claiborne Cnty*., 103 F.3d 495, 509 (6th Cir. 1996).  The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy.  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

A single act or decision, in appropriate circumstances, "may qualify as an official government policy, though it be unprecedented and unrepeated." *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000).  For a single decision to qualify as a policy, the decision must have been directed by someone who is a decisionmaker for the government or who established governmental policy on that issue.  *See Pembaur v. City of Cincinnati*, 475 U.S.469, 481 (1986).  Furthermore, the decisionmaker must have "possesse[d] final authority to establish municipal policy with respect to the action ordered."  *Id..* "[W]hether an official had final policymaking authority is a question of state law."  *Id.* at 483.   "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Id.* at 481-82.  Instead, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."  *Id.* at 482-83.

Largely based on *Pembaur*, the defense says that the county is entitled to summary judgment on a *Monell* claim if there is a constitutional claim remaining.  Liability for a single

28

discretionary act under *Pembaur* is narrow, they say, and does not encompass delegated authority for enforcing the Rules of Procedure.  This is different, they say, than unilateral authority that would encompass municipal liability.

      *Pembaur* dealt with hiring and firing authority of a county sheriff.  In reviewing principles of municipal liability, the Supreme Court noted:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent county policy and could give rise to municipal liability.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986).

      Here, the City of New Buffalo Rules of Procedure specifically set out that public comments were to be mediated by the mayor.  (ECF No. 1-1, PageID.18).  The Rules were established under the mandate of the City Charter, which provided that the Council was to determine its own rules. *See* § 3.9, City Charter, City of New Buffalo (eff. Nov. 1, 1965), https://ecode360.com/30882889. The mayor, in other words, had final say and his decision represented city policy with respect to the enforcement of the Rules of Procedure.  He was responsible for "suppressing 'disorderly conduct." (Rules of Procedure § 11) and given the authority to manage violations of the rule, including ordering expulsion (Rules of Procedure  § 12(K) (ECF No. 27-1).  The defense has not established that it is entitled to summary judgment under *Monell*.  The city rules vested the mayor

with final decision-making authority such that the city can be held responsible for a constitutional violation.

### C.    *Legislative Immunity for Defendant Humphrey*

The defense argues that with respect to the request for nominal and monetary damages, the mayor is entitled to absolute legislative immunity.  (ECF No. 36, PageID.362).  The Court agrees that legislative immunity applies to Defendant Humphrey in his individual capacity.

"Legislators have long been protected from liability for their legislative activities." *Timmon v. Wood*, 633 F. Supp. 2d 453, 459 (W.D. Mich. 2008) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1998)).  "This is because '[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability.'"  *Id.* (quoting *Bogan*, 523 U.S. at 42).  Immunity applies to "all actions taken in the sphere of legitimate legislative activity."  *Bogan*, 523 at 54.  "Whether an act is legislative depends on the nature of the act, rather than the official's motive or intent."  *Guindon v. Township of Dundee*, 488 F. App'x 27 (6th Cir. 2012) (citing *Bogan*, 523 U.S. at 54).  "A court must consider first whether the acts were legislative in form, i.e., whether 'they were integral steps in the legislative process.'"  *Id.* (quoting *Bogan*, 523 U.S. at 55).  "Second, a court must consider whether the defendant's acts were 'legislative in substance,' i.e. whether they 'bore all the hallmarks of traditional legislation,' including 'a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.'"  *Id.* (quoting *Bogan*, 523 U.S. at 55-56).

In *Timmon*, the Court concluded that legislative immunity applied to city council members who were sued by a plaintiff whose remarks were cut off during a public comment period.  Under Michigan law, as long as a commenter complies with the Council's rules governing public comment the Council is obligated to hear a person's comments. MICH. COMP. LAWS § 15.263(5).

30

The city council was acting in its legislative capacity, the Court said, when it exercises its investigatory power by presiding over a public comment period.  Taking public comment:

> provides insight into public opinion on specific legislative matters under consideration by the Council, particular pieces of legislation passed by the Council, and other city matters that the Council might wish to address in fulfilling its role as the legislative and policy-making body for the City. In short, public comment provides the Council with the information necessary to create wise and effective legislation.

*Timmon v. Wood*, 633 F. Supp. 2d 453, 460 (W.D. Mich. 2008)

Plaintiffs say that there is an important difference between this case and *Timmon*.  Unlike the rule at issue in *Timmon*, Rule 12 of the City of New Buffalo's Rules of Procedure did not limit public comments to agenda items or to city related matters.  The defense likens this case to the Seventh Circuit's decision in *Hansen v. Bennett*, 948 F.2d 397 (7th Cir. 1991) to claim that Defendant Humphrey's actions were not integral steps in the legislative process.  In *Hansen*, a case decided before *Bogan*, a frequent "political gadfly" of a mayor appeared at a city council meeting to question the environmental impact of a "Youth Turnabout Day."  The speaker, Hansen, made comments during an open comment period of the city council meeting during which any comments were permitted.  Hansen first "zealously pursued his differences with the mayor" for which he was ruled out of order.  Then, when another citizen was discussing the environmental impact, a "disturbance" ensued, Hansen was ruled out of order, and removed from the meeting.

The Seventh Circuit was faced with the question of whether a legislator who enforces rules governing parliamentary procedure is entitled to legislative immunity where the enforcement came during a portion of a city council meeting devoted to open comments from the general public. *Hansen*, 948 F.2d at 400.  Looking to the function the mayor was performing when ejecting Hansen from the meeting, the Seventh Circuit found that the mayor could not meet his burden of

demonstrating entitlement to legislative immunity because he was not acting in a legislative capacity.  The latter term, the court in *Hansen* said, must be construed narrowly so as to encompass only such matters as "voting on a resolution, speaking on legislation or in a legislative hearing, or subpoenaing records for use in a legislative hearing."  The Seventh Circuit concluded that restoring order in a public meeting did not fall within any of these categories, and thus held that the mayor was not entitled to legislative immunity.  *Id.* at 403.

The same result should drive the issue here, Plaintiffs say, because the public comment period during the three meetings at issue in this case was open to general discussion.  *See also Regenold v. Ohio State Board of Education*, No. 2:21-cv-1916, 2021 WL 2895130 (S.D. Ohio July 9, 2021) (legislative immunity did not apply where presiding officer prohibited speech on critical race theory during public comment period where board's policies provided for comment on "issues of general interest or items not scheduled for a vote.").  The Court is not persuaded. Unlike *Hansen*, the plaintiffs in this case were speaking on an issue that was an agenda item or (in the case of Plaintiff O'Donnell) had been an agenda item at the meeting immediately preceding the one where the comments had been shut down.  *Hansen* is distinguishable on those facts.  *See Afjeh v. Village of Ottawa Hills*, No. 3:09 CV 2672, 2010 WL 1795973, at *2 (N.D. Ohio May 5, 2010) (distinguishing *Hansen* and collecting cases holding that "moderating the speech and activity of public attendees at a local legislative meeting is legislative activity protected by absolute immunity").  This is not a case where a speaker was banned entirely from making comments. *C.f. Regenold*, *supra*.

The Court is satisfied that Defendant Humphrey's actions toward Plaintiffs during the public comment period at each of the three meetings in the case fell within the legitimate legislative sphere.  Defendant Humphrey advanced the Council's investigatory and information-gathering

needs when he presided over the public comment period.  The Council's role during public comment was to facilitate information gathering and hear the issues of on the minds of the citizens who signed up to speak and to maintain orderly discussion to further that role.  Even if Defendant Humphrey performed this function in contravention of Plaintiffs' First Amendment rights, his conduct was nonetheless part of gathering information during the public-comment period of a regularly scheduled city council meeting.  They were not actions that were merely "casually or incidentally related to legislative affairs."  *Hansen*, 948 F.2d at 402.  Instead they were overseeing and guiding the portion of a legislative session dedicated to "investigating . . . legislative issue[s]." *Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998).  Accordingly, the Court determines that Defendant Humphrey is entitled to legislative immunity.  Given this result, it is not necessary to determine whether Defendant Humphrey is entitled to qualified immunity.

## CONCLUSION

For all the above reasons, the parties' cross motions for summary judgment (ECF Nos. 36 and 37) are each granted in part, and denied in part.  The Plaintiffs are entitled to summary judgment in their favor on their as-applied challenges to the October 4, 2021, and March 21, 2022, meetings.  The defense is entitled to summary judgment in their favor on the November 23, 2021, meeting; the personal capacity claims against the mayor; and the facial challenges to the 2016 rules.  Claims for prospective injunctive relief are dismissed as non-justiciable at this time.

33

The remaining matter is on Plaintiffs' damages for the October 4, 2021, and March 21, 2022, constitutional violations.   The parties shall file a Joint Status Report setting forth the remaining contested issues and a proposed path for determining resolution no later than twenty-one days from the date of this Opinion and Order.

**IT IS SO ORDERED.**


Dated:      April 6, 2023             /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE